FILED

DEC - 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| FEDERAL ELECTION COMMISSION,<br>999 E Street N.W.<br>Washington D.C. 20463,<br><br>Plaintiff,<br><br>v.<br><br>JAMIE JACOB MORGAN,<br>28 Oriole Road<br>Pontiac, MI 48341,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civ. No.<br><br><br>COMPLAINT<br><br><br>Case: 1:07-cv-02196<br>Assigned To : Friedman, Paul L.<br>Assign. Date : 12/5/2007<br>Description: General Civil |

## COMPLAINT

1.     This is an action for declaratory, injunctive and other appropriate relief brought by the plaintiff Federal Election Commission (the "Commission" or "FEC") pursuant to the express authority granted to the FEC by the Federal Election Campaign Act, as amended (codified at 2 U.S.C. §§ 431-455), against defendant Jamie Jacob Morgan for his failure to comply with the terms of a conciliation agreement entered into with the Commission wherein Morgan admitted to knowing and willful violations of the Act and agreed to pay a civil penalty of $60,000.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this suit pursuant to 28 U.S.C. § 1345 as an action brought by an agency of the United States expressly authorized to sue by an act of Congress, *see* 2 U.S.C. §§ 437d(a)(6) and 437g(a)(5)(D).

1

3.     The parties stipulated to venue in this Court in the conciliation agreement. *See In the Matter of Jamie Jacob Morgan*, Matter Under Review 5358, Conciliation Agreement ¶ VII (attached as Exhibit 1).   Venue is also properly found in the District of Columbia pursuant to 28 U.S.C. § 1395(a) because the civil penalty accrues here, and pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts and omissions giving rise to the claims in this action, namely the negotiation and execution of the conciliation agreement, occurred in this district.

## PARTIES

4.     Plaintiff FEC is the independent agency of the United States government with exclusive jurisdiction over the administration, interpretation, and civil enforcement of the Act. *See generally* 2 U.S.C. §§ 437c(b)(1), 437d(a), & 437g. The Commission is authorized to institute investigations of possible violations of the Act, 2 U.S.C. § 437g(a)(1) and (2), and to enter into conciliation agreements to correct or prevent violations of the Act, 2 U.S.C. § 437g(a)(4)(A)(i). The Commission is also authorized to institute civil actions to enforce conciliation agreements, 2 U.S.C. § 437g(a)(5)(D).

5.     Defendant Jamie Jacob Morgan was a candidate for the Republican nomination in Michigan's 12th Congressional District during the 2002 election cycle and the *de facto* treasurer of the Morgan for Congress committee, defendant's principal campaign committee within the meaning of 2 U.S.C. § 431(4)-(5).  Exh. 1 ¶¶ IV.1 – IV.4.

## STATEMENT OF FACTS

6.     The Act and Commission regulations require political committee treasurers to file periodic reports of the committee's receipts and disbursements with the Commission for disclosure to the public.  2 U.S.C. §§ 434(a)(1) and (2)(A), 434(b)(2) and (b)(4); 11 CFR § 104.3(b).

2

7.    On April 20, 2007, the Commission executed a conciliation agreement with Defendant, pursuant to 2 U.S.C. § 437g(a)(4)(A)(i), wherein he admitted to certain violations of the Act and Commission regulations and agreed to pay a $60,000 civil penalty to the Commission (*id.* ¶ VI).

8.    As Defendant admitted in the conciliation agreement, he filed several disclosure reports with the Commission that contained many inflated and fictitious receipts and disbursements and other inaccuracies. Over $100,000 of the receipts he reported — more than half of the total reported — were fictitious. Exh. 1 ¶ IV.5. Almost $190,000 of the approximately $250,000 in total disbursements he reported were wholly fictitious. *Id.* ¶ IV.9. Defendant deliberately concealed $62,000 in contributions from his father to his campaign committee by portraying them as contributions from himself. *Id.* ¶¶ IV.22 – IV.29. Later, he deliberately commingled campaign funds with his personal funds. *Id.* ¶¶ IV.33 – IV.39. Morgan understood that these actions were in violation of the Act and the Commission's regulations. *Id.* ¶¶ IV.15 – IV.16, IV.27, IV.35, IV.38.

9.    As Defendant also admitted in the conciliation agreement, the actions described *supra* ¶ 8 constituted knowing and willful violations of: 2 U.S.C. § 434(b) (reporting requirements); 2 U.S.C. § 441a(f) (accepting excessive contributions); 2 U.S.C. § 441f (accepting contributions in the name of another); 2 U.S.C. § 432(b)(3) (commingling campaign funds with personal funds); and 11 C.F.R. § 102.3 (falsely terminating the Morgan for Congress committee). Exh. 1 ¶ V. Defendant also failed to report additional campaign receipts and disbursements in violation of 2 U.S.C. § 434(b) and failed to keep and maintain campaign records in violation of 2 U.S.C. §§ 432(c) and (d) and 11 C.F.R. § 104.14(b). *Id.*

3

10.    According to the terms of the conciliation agreement, Morgan was to make three $20,000 installment payments to the Commission within 30, 60, and 90 days from the date the conciliation agreement became effective.  Exh. 1 ¶ VI.  The conciliation agreement became effective after all parties had signed it on April 20.  *Id.* ¶ VIII.  The first $20,000 installment was thus due from the defendant on May 20, 2007, and the final $20,000 installment was due on July 20, 2007.

11.    Defendant has not paid any part of the civil penalty.

12.    The Commission made a number of requests that Morgan cure his default, including sending a letter that he received on September 4, 2007.  Morgan did not respond to these requests.

13.    The conciliation agreement provides (Exh. 1 ¶ VII) that the Commission may institute a civil action in this Court if the Commission believes that the agreement or any part of it has been violated.

<u>REQUEST FOR RELIEF</u>

Wherefore, plaintiff Federal Election Commission requests that this Court:

A.    Declare that Jamie Jacob Morgan has violated provisions of the conciliation agreement that he entered into with the Commission;

B.    Order Jamie Jacob Morgan to comply fully with the terms of the conciliation agreement by paying in full the $60,000 civil penalty;

C.    Permanently enjoin defendant from future violations of the provisions of the conciliation agreement;

D.    Award the FEC interest on the amount due until the civil penalty is paid in full; and

4

E.    Award such other and further relief as the Court deems appropriate.

FOR PLAINTIFF:

Thomasenia P. Duncan
General Counsel

David Kolker (D.C. Bar # 394558)
Associate General Counsel

Kevin Deeley
Acting Assistant General Counsel

Steve N. Hajjar
Attorney

FEDERAL ELECTION COMMISSION
999 E Street, N.W.
Washington, DC 20463
(202) 694-1650
(202) 219-0260 (FAX)

December 5, 2007

E 07 2196
PLF

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Federal Election Commission    No01 | Jamie Jacob Morgan |
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    Oakland (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF |

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | |
|---|---|
| Steve N. Hajjar Federal Election Commission 999 E Street, NW Washington DC 20463 | Case: 1:07-cv-02196 Assigned To : Friedman, Paul L. Assign. Date : 12/5/2007 Description: General Civil |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- (◉) 1 U.S. Government Plaintiff
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

| ○ A. *Antitrust* | ○ B. *Personal Injury/ Malpractice* | ○ C. *Administrative Agency Review* | ○ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane ☐ 315 Airplane Product Liability ☐ 320 Assault, Libel & Slander ☐ 330 Federal Employers Liability ☐ 340 Marine ☐ 345 Marine Product Liability ☐ 350 Motor Vehicle ☐ 355 Motor Vehicle Product Liability ☐ 360 Other Personal Injury ☐ 362 Medical Malpractice ☐ 365 Product Liability ☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act  Social Security: ☐ 861 HIA ((1395ff) ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g) ☐ 864 SSID Title XVI ☐ 865 RSI (405(g) Other Statutes ☐ 891 Agricultural Acts ☐ 892 Economic Stabilization Act ☐ 893 Environmental Matters ☐ 894 Energy Allocation Act ☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.  *(If Antitrust, then A governs)* |

| ○ E. *General Civil (Other)* | OR | ○ F. *Pro Se General Civil* |
|---|---|---|

| Real Property | Bankruptcy | Forfeiture/Penalty | |
|---|---|---|---|
| ☐ 210 Land Condemnation ☐ 220 Foreclosure ☐ 230 Rent, Lease & Ejectment ☐ 240 Torts to Land ☐ 245 Tort Product Liability ☐ 290 All Other Real Property | ☐ 422 Appeal 28 USC 158 ☐ 423 Withdrawal 28 USC 157 | ☐ 610 Agriculture ☐ 620 Other Food &Drug ☐ 625 Drug Related Seizure of Property 21 USC 881 ☐ 630 Liquor Laws ☐ 640 RR & Truck ☐ 650 Airline Regs ☐ 660 Occupational Safety/Health ☐ 690 Other | ☐ 470 Racketeer Influenced & Corrupt Organizations ☐ 480 Consumer Credit ☐ 490 Cable/Satellite TV ☐ 810 Selective Service ☐ 850 Securities/Commodities/ Exchange ☐ 875 Customer Challenge 12 USC 3410 ☐ 900 Appeal of fee determination under equal access to Justice ☐ 950 Constitutionality of State Statutes ☒ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |
| Personal Property ☐ 370 Other Fraud ☐ 371 Truth in Lending ☐ 380 Other Personal Property Damage ☐ 385 Property Damage Product Liability | Prisoner Petitions ☐ 535 Death Penalty ☐ 540 Mandamus & Other ☐ 550 Civil Rights ☐ 555 Prison Condition  Property Rights ☐ 820 Copyrights ☐ 830 Patent ☐ 840 Trademark  Federal Tax Suits ☐ 870 Taxes (US plaintiff or defendant ☐ 871 IRS-Third Party 26 USC 7609 | Other Statutes ☐ 400 State Reapportionment ☐ 430 Banks & Banking ☐ 450 Commerce/ICC Rates/etc. ☐ 460 Deportation | |

| O **G. Habeas Corpus/ 2255** | O **H. Employment Discrimination** | O **I. FOIA/PRIVACY ACT** | O **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| O **K. Labor/ERISA (non-employment)** | O **L. Other Civil Rights (non-employment)** | O **M. Contract** | O **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
2 U.S.C. § 437g(a)(5)(D). Action pursuant to Federal Election Campaign Act to enforce conciliation agreement.

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐ | **DEMAND $** _____ **JURY DEMAND:** | Check YES only if demanded in complaint<br>YES ☐   NO ☒ |
|---|---|---|---|

| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | YES ☐   NO ☒ | If yes, please complete related case form. |
|---|---|---|---|

DATE   12/05/07        SIGNATURE OF ATTORNEY OF RECORD   *[signature]*

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

**EXHIBIT 1**

# BEFORE THE FEDERAL ELECTION COMMISSION

In the Matter of )

)  MUR 5358

Jamie Jacob Morgan )

## CONCILIATION AGREEMENT

RECEIVED
FEDERAL ELECTION
COMMISSION
OFFICE OF GENERAL
COUNSEL

2007 MAR -6 P 5: 1

This matter was initiated by a signed, sworn, and notarized complaint filed by several individuals - Mathew Roth, Sean Callaghan, Jessica M. Davis, Joseph N. Horenstein, Timothy P. McDonald, and Cheryl A. Mathews. The Federal Election Commission ("Commission") found reason to believe that Jamie Jacob Morgan ("Respondent") knowingly and willfully violated 2 U.S.C. §§ 432(b)(3), 434(b), 441a(f), and 441f, and 11 C.F.R. § 102.3, and that he violated 2 U.S.C. §§ 432(c) and (d), 434(b), and 11 C.F.R. § 104.14(b).

NOW, THEREFORE, the Commission and the Respondent, having participated in informal methods of conciliation, prior to a finding of probable cause to believe, do hereby agree as follows:

I. The Commission has jurisdiction over the Respondent and the subject matter of this proceeding, and this agreement has the effect of an agreement entered pursuant to 2 U.S.C. § 437g(a)(4)(A)(i).

II. Respondent has had a reasonable opportunity to demonstrate that no action should be taken in this matter.

III. Respondent enters voluntarily into this agreement with the Commission. **07 2196**

IV. The pertinent facts in this matter are as follows:

1. Jamie Jacob Morgan was a candidate for the Republican nomination in Michigan's

FILED

DEC 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Conciliation Agreement
MUR 5358
Jamie Jacob Morgan
Page 2

1    12th Congressional District during the 2002 election cycle.[1]

2        2. Morgan for Congress ("Morgan Committee") is a political committee within the

3    meaning of 2 U.S.C. § 431(4) and the principal campaign committee of Jamie Jacob Morgan

4    within the meaning of 2 U.S.C. § 431(5).

5        3. Jamie Jacob Morgan ("Morgan") served as the *de facto* treasurer of the Morgan

6    Committee.

7        4. As the *de facto* treasurer of the Morgan Committee, Morgan filed several disclosure

8    reports with the Commission. As detailed below, those reports contained many inflated and

9    fictitious receipts and disbursements, as well as other inaccuracies.

        5. A comparison of the Morgan Committee's bank records and the amended disclosure

11   reports that Morgan filed with the Commission show that more than half of the over $200,000 in

12   total receipts Morgan reported were fictitious receipts. In fact, the Morgan Committee's bank

13   records show receipts totaling only $98,850.

14       6. In particular, in the Amended 2002 July Quarterly Report Morgan reported receipts

15   totaling $200,300 from 115 contributors. However, the Morgan Committee's bank records show

16   receipts totaling only $45,360 from 13 contributors, including a total of $33,250 from Morgan,

17   during the July reporting period.

18

---

[1] All of the facts recounted herein occurred prior to the effective date of the Bipartisan Campaign Reform Act of 2002 ("BCRA"), Pub. L. 107-155, 116 Stat. 81 (2002). Accordingly, unless specifically noted to the contrary, all citations to the Federal Election Campaign Act, as amended, ("the Act") are to the Act as it read prior to the effective date of BCRA and all citations to the Commission's regulations are to the 2002 edition of Title 11, Code of Federal Regulations, which was published prior to the Commission's promulgation of any regulations under BCRA. All statements of the law in this agreement that are written in the present tense shall be construed to be in either the present or the past tense, as necessary, depending on whether the statement would be modified by the impact of BCRA or the regulations thereunder.

1       7. Morgan also reported making a $10,000 loan to the Morgan Committee from the

2    proceeds of a bank loan he obtained that was secured by his personal automobile. However, the

3    Morgan Committee's bank account records do not show receipt of any funds from this $10,000

4    loan.

5       8. Similarly, in the Amended 2002 April Quarterly Report, Morgan reported receiving a

6    total of $11,300 in receipts - $2,000 from two itemized contributors, $2,800 in unitemized

7    receipts, and a $6,500 contribution from himself. However, the Morgan Committee's bank

8    records show receipts totaling only $2,025 from 21 contributors during the April reporting

9    period, most of which were in amounts less than $200 and did not require identification of the

contributors in the committee's disclosure reports. *See* 2 U.S.C. § 434(b)(3); 11 C.F.R.

11    § 104.3(a)(4)(i). In addition, the Morgan Committee's bank records do not show that the $6,500

12    contribution from Morgan was in fact made.

13      9. Morgan reported similar inaccurate information regarding the Morgan Committee's

14    disbursements. He reported $253,666 in total disbursements, but the Morgan Committee's bank

15    records show that over $188,208 of the reported disbursements were wholly fictitious, and more

16    than $19,000 in reported disbursements were inflated.

17      10. Specifically, Morgan reported disbursements, totaling $11,200, to eight vendors in

18    the 2002 Amended April Quarterly Report. However, as the following chart shows, the Morgan

19    Committee's bank account records show that only three disbursements, totaling $2,211.98, were

20    made during the April reporting period:

Conciliation Agreement
MUR 5358
Jamie Jacob Morgan
Page 4

1

| Date | Disbursement | Vendor |
|---|---|---|
| 03/11/02 | $144.16 | Office Max |
| 03/21/02 | $67.82 | Office Max |
| 03/27/02 | $2,000.00 | Victory Enterprise |
| | TOTAL $2,211.98 | |

2

3        11. In addition, Morgan reported disbursements totaling $38,425 to 15 persons in the

4   2002 Amended July Report. However, as shown in the chart below, the Morgan Committee's

5   bank records show that disbursements totaling only $19,860.73 were made to 16 persons during

6   the July reporting period.

| Date | Disbursement | Payee |
|---|---|---|
| 04/26/02 | $72.14 | Ameritech |
| 05/13/02 | $60.00 | Morgan, Jamie |
| 05/23/02 | $40.00 | City of Warren |
| 05/23/02 | $20.00 | City of Fraser |
| 05/28/02 | $4,000.00 | Summit Marketing & Design |
| 06/03/02 | $1,500.00 | Unidentified Payee[2] |
| 06/04/02 | $100.00 | CTE William J. Nearon |
| 06/17/02 | $188.64 | Meijer |
| 06/17/02 | $100.00 | SOCNAACP |
| 06/17/02 | $7,523.50 | Impact Strategies |
| 06/19/02 | $40.00 | Tom Zontine |
| 06/20/02 | $1,080.00 | Maynard Consulting |
| 06/24/02 | $50.00 | Direct Mailers |
| 06/26/02 | $57.24 | Kinkos |
| 06/27/02 | $210.00 | Post Master |
| 06/28/02 | $4,819.21 | ADRAY Camera |
| | TOTAL $19,860.73 | |

7

---

[2] The records do not show a payee for this transaction.

1    12. Furthermore, Morgan reported a total of $204,041, including a total of $26,841 to

2    three vendors, as operating expenditures in his Amended Termination Report, covering July 16 to

3    July 18, 2002. One hundred and seventy-seven thousand, two hundred dollars ($177,200) in

4    reported disbursements purportedly were refunds to the contributors disclosed in the April and

5    July Reports. However, the Morgan Committee's bank account records do not show any of the

6    reported refunds being made.

7    13. The Act requires every political committee to have a treasurer. 2 U.S.C. § 432(a).

8    *See* 11 C.F.R. § 102.2(a)(1)(iv). The Act requires the treasurer of a political committee to file

9    complete and accurate periodic reports of receipts and disbursements by the committee. 2 U.S.C.

     § 434(a)(1) and (2)(A). Among other items, the reports must disclose all contributions to and

11   disbursements from the committee. 2 U.S.C. § 434(b)(2) and (b)(4); 11 C.F.R. § 104.3(b).

12   Additionally, the treasurer of a committee is required to identify contributors, other than political

13   committees, whose aggregate contribution(s) exceed $200 in an election cycle. 2 U.S.C.

14   § 434(b)(3); 11 C.F.R. § 104.3(a)(4)(i) and (iv). The treasurer must also disclose the name and

15   address of each person to whom an expenditure in an aggregate amount or value in excess of

16   $200 within the calendar year is made by the reporting committee to meet a candidate or

17   committee operating expense, and the name and address of each person who has received a

18   disbursement in an aggregate amount or value in excess of $200 within the election cycle,

19   together with the date, amount, and purpose of such operating expenditure. 2 U.S.C.

20   § 434(b)(5)(A) and (6)(A); 11 C.F.R. §§ 104.3(b)(4)(i) and (vi), and 104.9(a).

     14. The treasurer is personally responsible for filing complete and accurate disclosure

22   reports and statements, including the committee's registration form, with the Commission.

Conciliation Agreement
MUR 5358
Jamie Jacob Morgan
Page 6

1   11 C.F.R. § 104.14(d). A treasurer may also be held personally liable for violations of the Act.

2   See *FEC v. Toledano*, 317 F.3d 939, 947 (9th Cir. 2003); *FEC v. John A. Dramesi for Cong.*

3   *Comm.*, 640 F. Supp. 985 (D.N.J. 1986). As the *de facto* treasurer, who prepared and filed the

4   Morgan Committee's disclosure reports, Morgan may be held liable for their accuracy and

5   completeness. See, e.g., *FEC v. Committee to Elect Bennie O. Batts*, No. 87-5789 (S.D.N.Y.

6   Feb. 24, 1989); *see also* MUR 5453 (Giordano for U.S. Senate Committee) (deputy treasurer

7   functioning as *de facto* treasurer held liable for accepting excessive and prohibited contributions

8   and underreporting receipts on behalf of committee).

9       15. Morgan acknowledged that he reported the fictitious and inflated contributions and

    disbursements described above. He explained that he inflated actual receipts from contributors

11  and reported receipts from individuals who made no monetary contribution to the Morgan

12  Committee. He also acknowledged that he did not make the reported refund disbursements.

13      16. Morgan's actions constitute knowing and willful conduct. The phrase "knowing and

14  willful" indicates that "acts were committed with a knowledge of all the relevant facts and a

15  recognition that the action is prohibited by law...." H.R. Rpt. 94-917 at 3-4 (Mar. 17, 1976)

16  (*reprinted in* Legislative History of Federal Election Campaign Act Amendments of 1976 at 803-

17  04 (Aug. 1977)); *see also National Right to Work Comm. v. FEC*, 716 F.2d 1401, 1403 (D.C.

18  Cir. 1983) (*citing AFL-CIO v. FEC*, 628 F.2d 97, 98, 101 (D.C. Cir. 1980)) for the proposition

19  that "knowing and willful" means "'defiance' or 'knowing, conscious, and deliberate flaunting'

20  [sic] of the Act"); *United States v. Hopkins*, 916 F.2d 207, 214-15 (5th Cir. 1990). In addition,

    the *Hopkins* court held that taking steps to disguise the source of funds used in illegal activities

22  may reasonably be explained as a "motivation to evade lawful obligations." *Hopkins*, 916 F.2d at

Conciliation Agreement
MUR 5358
Jamie Jacob Morgan
Page 7

1  213-14 (citing *Ingram v. United States*, 360 U.S. 672, 679 (1959)) (internal quotations omitted).

2  Morgan admitted that he was aware that he was required to file accurate information with the

3  Commission. He admitted that he understood the need for accurate disclosure reports and

4  recognized that the Commission was reviewing the reports for accuracy. Nevertheless, Morgan

5  deliberately filed inaccurate reports with the Commission.

6      17. As Morgan was the *de facto* treasurer throughout the Morgan Committee's existence

7  he is responsible for the reporting discrepancies in the Morgan Committee's disclosure reports.

8      18. In addition to reporting fictitious and inflated receipts and disbursements, Morgan

9  failed to report or misreported several other receipts and disbursements. In particular, Morgan

   did not report or misreported a total of $19,250 in receipts to the Morgan Committee from 7

11  contributors, including himself. The receipts span the period from June 4, 2002 through July 15,

12  2002 and were in amounts between $1,000 and $5,250.

13      19. Morgan also did not report $29,106.89 in disbursements from the Morgan

14  Committee's account to several vendors during his campaign. The disbursements range in

15  amounts from $210 to $7,280 and span the period from June 27 to July 18, 2002.

16      20. Further, Morgan made several campaign related disbursements directly from his

17  personal checking account and with his personal credit cards that he did not report to the

18  Commission. Morgan's credit card statements show several unreported payments that likely

19  were campaign-related. In particular, the statements show payments to Kinko's (copying) and

20  Victorystore.com (signs and bumper stickers), vendors to which Morgan specifically

   acknowledged that he made campaign-related payments. As shown in the chart below, Morgan's

22  credit card statements show a total of $2,853.86 in apparent campaign-related disbursements

Conciliation Agreement
MUR 5358
Jamie Jacob Morgan
Page 8

1    between February 4 and July 11, 2002 to four vendors that exceeded the $200 threshold for

2    disclosure to the Commission. *See* 2 U.S.C. § 434(b)(5) and (6).

| Date | Amount | Vendor |
|------|--------|--------|
| 02/04/02 | $215.45 | Kinko's |
| 02/07/02 | $319.54 | Kinko's |
| 03/27/02 | $1,630.00 | Victorystore.com |
| 07/11/02 | $688.86 | Michigan Republicans |
| | **TOTAL** **$2,853.86** | |

3

4       21. Morgan was required to report each such campaign disbursement from his personal

5    checking account and credit card as an in-kind contribution to the Morgan Committee.[3]

     11 C.F.R. §§ 100.7(a)(1)(iii) and 100.8(a)(1)(iv). As *de facto* treasurer of the Morgan

7    Committee, Morgan did not comply with the Act by failing to report the above receipts and

8    disbursements.

9       22. In addition to the reporting discrepancies described above, the Morgan Committee's

10   bank records show that a total of $62,000 of the Morgan Committee's total campaign receipts of

11   $98,850 came from Morgan's father, Jerry Morgan, in the form of several cashier's checks,

12   which were not reported to the Commission. In particular, the bank records show the following:

13   On June 12, 2002, Morgan cashed a $50,000 cashier's check from his father through his personal

14   checking account at Comerica Bank. On the same date, Morgan deposited $20,000 of the funds

15   into the Morgan Committee's checking account. He deposited an additional $20,000 of the funds

---

[3] Although contributions made from a candidate's personal funds are not subject to the contribution limits, such contributions must be reported to the Commission. 11 C.F.R. § 110.10(a).

Conciliation Agreement
MUR 5358
Jamie Jacob Morgan
Page 9

1    into his personal checking account and kept the remaining $10,000 as cash. One month later, on

2    July 12, 2002, Morgan deposited seven cashier's checks into the Morgan Committee's account in

3    the following amounts: one check in the amount of $15,000; three checks in the amount of

4    $5,000 each; and three checks in the amount of $4,000 each. All seven of the cashier's checks

5    were from "J. Morgan" and were made payable to "J. Morgan."

6        23. The cashier's checks from Morgan's father resulted in excessive contributions under

7    the Act, which defines a contribution as any gift, loan, advance, or deposit of money or anything

8    of value made by any person for the purpose of influencing any election for federal office.

9    2 U.S.C. § 431(8)(A)(i); 11 C.F.R. § 100.7(a)(1).

        24. During the 2002 election cycle, contributions from individuals were limited to a total

11    of $1,000 per election. *See* 2 U.S.C. § 441a(a)(1)(A); 11 C.F.R. § 110.1(b)(1). As pertinent

12    herein, an election is defined as a general, special, primary, or runoff election. 2 U.S.C.

13    § 431(1)(A); 11 C.F.R. § 100.2. Since Morgan was a candidate only for the primary election, his

14    campaign was limited to a total contribution of $1,000 per individual.

15        25. The Act and the Commission's regulations prohibit a candidate or political

16    committee from knowingly accepting any contributions from an individual totaling over $1,000

17    per election. *See* 2 U.S.C. § 441a(f) and 11 C.F.R. § 110.9(a). Those provisions also prohibit an

18    officer or employee of a political committee from knowingly accepting a contribution made for

19    the benefit or use of a candidate that violate the contribution limitations of the Act. *Id.* Finally,

20    the Act provides that any candidate who receives a contribution for use in connection with his

        campaign shall be considered as having received the contribution as an agent of the authorized

22    committee of such candidate. *See* 2 U.S.C. § 432(e)(2).

Conciliation Agreement
MUR 5358
Jamie Jacob Morgan
Page 10

1    26. All of the cashier's check contributions from Morgan's father were greater than

2    $4,000, and therefore over the lawful $1,000 contribution limit. Morgan was aware that he was

3    accepting excessive contributions from his father. Morgan was fully aware of the amounts of the

4    checks, since he personally endorsed the cashier's checks from his father and deposited each of

5    them into the Morgan Committee's checking account.

6    27. Morgan's deliberate concealment of his father's contributions is sufficient to satisfy

7    the knowing and willful standard of the Act. *See U.S. v. Hopkins*, 916 F.2d at 213-14.

8    28. The cashier's checks Morgan received from his father also resulted in contributions

9    made in the name of another under the Act. The Act provides that no person shall make a

     contribution in the name of another person or knowingly permit his name to be used to effect

11   such a contribution, and no person shall knowingly accept a contribution made by one person in

12   the name of another person. 2 U.S.C. § 441f. The Commission's regulations also provide that

13   no person shall knowingly help or assist any person in making a contribution in the name of

14   another. 11 C.F.R. § 110.4(b)(1)(iii). The regulations include examples of contributions in the

15   name of another, such as giving money or anything of value, all or part of which was provided to

16   the contributor by another person (the true contributor) without disclosing the source of money or

17   the thing of value to the recipient candidate or committee at the time the contribution is made.

18   11 C.F.R. § 110.4(b)(2)(i).

19   29. In addition to not disclosing receipt of the cashier's checks to the Commission as

20   contributions from his father, Morgan attempted to conceal his father's contributions by

     portraying them as his own personal contributions. In fact, Morgan reported several fictitious

22   contributions in his own name in the Amended July Report, including a $15,000 contribution on

1   June 20, 2002.  As stated previously, taking steps to disguise the source of funds is evidence of

2   knowing and willful conduct. _See Hopkins_, 916 F.2d at 213-14.

3       30.  Morgan also did not disclose the correct amount of campaign receipts in the Morgan

4   Committee's account and outstanding obligations the Morgan Committee owed when he filed the

5   Morgan Committee's Termination Report.

6       31.  The Act and Commission's regulations require that disclosure reports filed with the

7   Commission include the amount of cash on hand at the beginning and end of a reporting period.

8   _See_ 2 U.S.C. § 434(b)(1) and (4)(G), and 11 C.F.R. § 104.3(a)(1) and (b)(2)(vi) and (vii).

9       32.  The Act provides that a committee may terminate only when it files a statement that

    it will no longer receive any contributions or make any disbursements, and it has no outstanding

11  debts or obligations. 2 U.S.C. § 433(d)(1). As pertinent herein, the Commission's regulations

12  further require that when a committee requests to terminate it shall provide a final report of

13  receipts and disbursements, which report shall include a statement as to the purpose for which

14  residual funds will be used. 11 C.F.R. § 102.3(a)(1). _See_ 11 C.F.R. § 102.3(b) (applying the

15  above termination requirements to a principal campaign committee).

16      33.  On July 18, 2002, Morgan filed a Termination Report with the Commission

17  (covering the period July 16-18, 2002), in which he reported that the Morgan Committee had

18  only three cents ($.03) Cash on Hand. However, the Morgan Committee's bank records show

19  that there was $33,506.34 in its checking account at the time.  On July 22, 2002, Morgan closed

20  the Morgan Committee's checking account and deposited the $33,506.34 into his personal

    Comerica Bank checking account and used the vast majority of the funds ($27,232.50) to pay

22  campaign obligations.  After paying campaign obligations, Morgan later filed with the

1   Commission on July 29, 2002 an Amended Termination Report that showed the same three cents

2   ($.03) Cash on Hand as in the original Termination Report and did not show the $27,232.50 in

3   disbursements for campaign obligations. The Report purportedly covered the period from July 1-

4   18, 2002. Finally, almost two months later, on September 18, 2002, Morgan filed a final

5   Amended Termination Report that showed $984 Cash on Hand for the same July 16-18, 2002

6   period shown in the original Termination Report. That final Amended Termination Report also

7   did not disclose the $27,235.50 in disbursements that Morgan made after filing the original

8   Termination Report.

9         34. As discussed above, Morgan did not disclose the Morgan Committee's true financial

    condition when he filed the Morgan Committee's Termination Reports, as required by the Act

11  and the Commission's regulations. *See* 2 U.S.C. § 434(b)(1) and (4)(G), and 11 C.F.R.

12  § 104.3(a)(1) and (b)(2)(vi) and (vii). Consequently, Morgan was able to terminate the Morgan

13  Committee without complying with the procedures set forth in the Act and the Commission's

14  regulations. *See* 2 U.S.C. § 433(d)(1) and 11 C.F.R. § 102.3(b).

15        35. Admittedly, Morgan was aware that disclosure reports filed with the Commission

16  were required to be accurate. Morgan acknowledged that he intentionally filed inaccurate

17  information in the Termination Report in order to terminate the Morgan Committee. The

18  requirement for accurate information in disclosure reports extends to the Termination Report

19  Morgan filed with the Commission. 11 C.F.R. § 102.3.

20        36. In addition to depositing the $33,506.34 in campaign receipts into his personal

    Comerica Bank checking account, Morgan also deposited two $2,000 checks from two

1    contributors (Jeffrey and Andrew Jones) directly into his personal Comerica Bank account on

2    June 17, 2002.

3         37. The Act provides that all funds of a political committee shall be segregated from, and

4    may not be commingled with, the personal funds of any individual. 2 U.S.C. § 432(b)(3).

5    *See* 11 C.F.R. § 102.15. The Act and the Commission's regulations also require that all receipts

6    received by a political committee be deposited into the committee's checking account. 2 U.S.C.

7    § 432(h)(1); 11 C.F.R. § 103.3(a).

8         38. Morgan's actions in commingling campaign funds with his personal funds are

9    knowing and willful. Morgan withdrew the $33,506 in campaign funds to conceal them from the

     Commission in order to terminate the Morgan Committee.

11        39. Efforts at concealment or disguise are sufficient to support a conclusion of knowing

12   and willful violation of the Act, particularly regarding the $33,506 in residual campaign funds.

13   *See United States v. Hopkins*, 916 F.2d 207, 213-14.

14        40. Finally, The Act and the Commission's regulations require a treasurer to keep the

15   following records: (1) an account of all contributions received by or on behalf of the committee;

16   (2) the name and address of any person who makes any contribution in excess of $50, together

17   with the date and amount of such contribution by any person; (3) the identification of any person

18   who makes a contribution or contributions aggregating more than $200 during a calendar year,

19   together with the date and amount of any such contribution; and (4) the name and address of

20   every person to whom any disbursement is made; the date, amount, and purpose of the

     disbursement, and the name of the candidate and the office sought by the candidate, if any, for

22   whom the disbursement was made, including a receipt, invoice, or cancelled check for each

Conciliation Agreement
MUR 5358
Jamie Jacob Morgan
Page 14.

1    disbursement in excess of $200. 2 U.S.C. § 432(c)(1)-(3) and (5); 11 C.F.R. § 102.9(a) and (b).

2    The treasurer is required to maintain records, including vouchers, worksheets, receipts, bills and

3    accounts, which shall provide in sufficient detail the necessary information and data from which

4    the filed reports and statements may be verified, explained, clarified, and checked for accuracy

5    and completeness by the Commission or its authorized representative(s). 11 C.F.R.

6    § 104.14(b)(1) and (3). The records must be kept for 3 years after the corresponding report is

7    filed. 2 U.S.C. § 432(d); 11 C.F.R. § 104.14(b)(3).

8        41. Morgan did not comply with the above provisions. Morgan admitted that he did not

9    keep or maintain proper records of receipts or disbursements. For example, he did not keep any

     log or record of the contributions he received or disbursements made on behalf of the Morgan

11   Committee. Consequently, Morgan was unable to provide the Commission with any checks,

12   deposit slips, or ledgers regarding contributions in response to its subpoena for such documents,

13   which was issued within the prescribed three-year period for the preservation of such records.

14   Morgan was equally unable to provide receipts, invoices, or cancelled checks for campaign

15   disbursements. In fact, Morgan was unable to provide much of the necessary information and

16   data from which the filed reports may be verified, explained, clarified, or checked for accuracy

17   and completeness.

18       V. 1. Respondent knowingly and willfully violated 2 U.S.C. § 434(b) by filing with the

19   Commission disclosure reports that contained fictitious and inflated receipts and disbursements.

20       2. Respondent violated 2 U.S.C. § 434(b) by failing to report additional campaign

     receipts and disbursements.

Conciliation Agreement
MUR 5358
Jamie Jacob Morgan
Page 15

1   3. Respondent knowingly and willfully violated 2 U.S.C. § 441a(f) by accepting

2  contributions that exceeded the contribution limits of the Act.

3   4. Respondent knowingly and willfully violated 2 U.S.C. § 441f by accepting

4  contributions made in the name of another.

5   5. Respondent knowingly and willfully violated 2 U.S.C. § 432(b)(3) by

6  commingling campaign funds with personal funds.

7   6. Respondent violated 2 U.S.C. § 432(c) and (d), and 11 C.F.R.§ 104.14(b) by

8  failing to keep and maintain campaign records.

9   7. Respondent knowingly and willfully violated 11 C.F.R.§ 102.3 by falsely

  terminating the Morgan Committee.

11   8. Respondent will cease and desist from violating 2 U.S.C. §§ 432(b)(3), 432(c) and

12  (d), 434(b), 441a(f), and 441f, and 11 C.F.R. §§ 102.3 and 104.14(b).

13  VI. Respondent will pay a civil penalty to the Federal Election Commission in the

14  amount of Sixty Thousand dollars ($60,000), pursuant to 2 U.S.C. § 437g(a)(5)(A) and

15  § 437g(a)(5)(B), such penalty to be paid as follows:

16   1. An initial installment payment of $20,000 shall be paid within 30 days from the

17  date this agreement becomes effective;

18   2. A second installment payment of $20,000 shall be paid within 60 days from the

19  date this agreement becomes effective;

20   3. A final installment payment of $20,000 shall be paid within 90 days from the date

  this agreement becomes effective;

Conciliation Agreement
MUR 5358
Jamie Jacob Morgan
Page 16

1          4. In the event that any installment payment is not received by the Commission by the

2     fifth day after it becomes due, the Commission may, at its discretion, accelerate the remaining

3     payments and cause the entire amount to become due upon ten days written notice to the

4     respondent(s). Failure by the Commission to accelerate the payments with regard to any overdue

5     installment shall not be construed as a waiver of its right to do so with regard to future overdue

6     installments.

7          VII. The Commission, on request of anyone filing a complaint under 2 U.S.C.

8     § 437g(a)(1) concerning the matters at issue herein or on its own motion, may review compliance

9     with this agreement. If the Commission believes that this agreement or any requirement thereof

10    has been violated, it may institute a civil action for relief in the United States District Court for

11    the ~~District of Columbia~~ DISTRICT OF COLUMBIA

12         VIII. This agreement shall become effective as of the date that all parties hereto have

13    executed same and the Commission has approved the entire agreement.

14         IX. This Conciliation Agreement constitutes the entire agreement between the parties on

15    the matters raised herein, and no other statement, promise, or agreement, either written or oral,

Conciliation Agreement
MUR 5358
Jamie Jacob Morgan
Page 17

1   made by either party or by agents of either party, that is not contained in this written agreement

2   shall be enforceable.

3   FOR THE COMMISSION:

4   Thomasenia Duncan
5   Acting General Counsel

6   BY:

7   ~~Rhonda J. Vosdingh~~ Ann Marie Tereaken   Date   4/20/07

8   Acting Associate General Counsel
9            for Enforcement

10  FOR THE RESPONDENT:

11  _____        Date   2/27/07 _____

12  Name
13  Position
14
15